IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CHRISTOPHER D. LYONS                                                                    PLAINTIFF

v.                               No. 4:04CV02303 JLH

CITY OF CONWAY, ARKANSAS;
RANDALL ARAGON, In His Official
Capacity as Chief of Police for Conway,
Arkansas; SGT. OTTIE COWGILL, In His
Official Capacity as an Officer of the
Conway Police Department, and Individually                                              DEFENDANTS

**OPINION AND ORDER**

Christopher D. Lyons has brought suit against Randall Aragon, in his official capacity as Chief of Police for the City of Conway, Sergeant Ottie Cowgill, both individually and in his official capacity as a police officer for the City of Conway, and the City of Conway. Pursuant to 42 U.S.C. § 1983, Lyons alleges that the defendants deprived him of rights guaranteed him by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, specifically the right to be free from excessive force and unlawful seizure, the right to be free from cruel and unusual punishment, and the right to due process. Lyons seeks to recover compensatory and punitive damages against the defendants as well as costs and attorney's fees. Before the Court is defendants' motion for summary judgment, or in the alternative, a motion for qualified immunity. For the following reasons, the motion for summary judgment is granted in part and denied in part.

**I.**

A court should enter summary judgment if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party carries its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)). Furthermore, the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S. Ct. at 1356. A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322, 106 S. Ct. at 2552. More specifically,

> "in passing upon whether there is sufficient evidence to submit an issue to the jury [the court] need look only to the evidence and reasonable inferences which tend to support the case of" the nonmoving party. . . . [S]ubsequent decisions have clarified that this passage was referring to the evidence to which the trial court should *give credence*, not the evidence that the court should *review*. [In the context of summary judgment], we have stated that the court must review the record "taken as a whole."
>
> * * *
>
> In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that

> "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-51, 120 S. Ct. 2097, 2110, 147 L. Ed. 2d 105 (2000) (quoting *Wilkerson v. McCarthy*, 336 U.S. 53, 57, 69 S. Ct. 413, 415, 93 L. Ed. 497 (1949); *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356; *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513; 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2529, at 300 (2d ed. 1995)) (reviewing a Fifth Circuit decision to grant judgment as a matter of law, but stating "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same'" (quoting *Anderson*, 477 U.S. at 250-51, 106 S. Ct. at 2511-12)) (citations omitted); *see also Kinserlow v. CMI Corp.*, 217 F.3d 1021, 1025 (8th Cir. 2000).

## II.

On February 27, 2002, Christopher Lyons attempted to shoplift steaks from a Kroger store in Conway. Lyons was chased by a Kroger employee and hid behind a nearby restaurant. At approximately 4:40 p.m., Conway police officers Sergeant Ottie Cowgill and Shane Hobbs separately responded to a dispatch from a call regarding the incident at Kroger. When Cowgill arrived on the scene, the employee who had been chasing Lyons informed Cowgill of Lyons's location.

Through slats in a fence behind the restaurant, Cowgill was able to see Lyons in a crouched position. The officers were forced to enter the fenced area and then turn to face Lyons. Upon having to enter the fence and turn to face an unknown suspect, Cowgill drew his weapon, but did not cock it; Hobbs also drew his weapon. At that point, Cowgill could not determine whether or not Lyons

3

was armed. Cowgill stated that he felt threatened because Lyons had run from Kroger; he was wearing a bulky coat; he was in a crouched position in an enclosed area; and when the officers entered the enclosed area, they could not see Lyons's hand as they were "cuffed in his belt line area." Cowgill ordered Lyons to get up and come forward. When Lyons came near enough for Cowgill to observe his hands and clothing, Cowgill determined that Lyons was not carrying any weapons.

Once Cowgill was able to determine that Lyons was unarmed, he ordered Lyons to get on the ground. According to Cowgill, he also attempted to reholster his weapon at that point. Lyons started to get on the ground and was in a position "like a frog on a lily pad." The officers approached Lyons on either side of him, and each grabbed a shoulder. At that point, Cowgill's weapon, a .45 caliber weapon with hollow point bullets, discharged. The bullet traveled downward, striking Lyons in the shoulder, exiting his underarm and then striking the top of his thigh.

According to Cowgill, the discharge was accidental and a result of a botched attempt to reholster his weapon. Specifically, Cowgill was aiming to place Lyons on the ground in order to handcuff him and place him under arrest. In the process of doing so, Cowgill reached across his body with his left hand to place it on the back of Lyons's left shoulder; at the same time, Cowgill was attempting to holster his weapon with his right hand. Cowgill stated, "I was making every effort to try to put my weapon in the holster, I couldn't get it in. We were going to the ground and I was fighting with my holster, struggling with him to get him down on the ground, and I heard a loud boom." Hobbs stated that he saw Cowgill "pawing at his coat trying to get it to holster. He was having some kind of trouble with his coat and his holster combination . . . . I distinctly remember that." However, Hobbs diverted his attention from Cowgill back to Lyons prior to the gunshot.

4

Lyons also had his back to Cowgill at that point, so neither Hobbs nor Lyons witnessed the gun discharge. There were no other witnesses to the incident.

According to Cowgill, he never had any intention of firing his weapon. Cowgill also alleges that since the incident, he has experienced post-traumatic stress disorder, stating, "I was having a lot of dizzy spells. If I went to a call, . . . I got extremely dizzy. And if there was a call that required my firearm to come out, I wouldn't bring it out." As a result, Cowgill now works as a code enforcement officer rather than as an active duty police officer. Lyons admits that Cowgill appeared upset after the gunshot, but argues that he could have been upset for a variety of reasons.

As a Sergeant in the Conway Police Department, Lyons contends that Cowgill was certified as a handgun expert in general and also had specific training for the Sig Sauer P220 series semi-automatic, the gun he had on the day in question. Lyons also cites the Sig Sauer Pistol Owners Manual, which states, "You can fire the pistol only by pulling the trigger." Cowgill stated that he did not cock the weapon, thus requiring the firing of the weapon by double action, which requires twelve and a half to thirteen and a half pounds of pressure. While the Internal Affairs investigation found no evidence of intent on the part of Cowgill, Lyons notes that it also concluded that the gun most likely discharged as a result of physical confrontation with Lyons while Cowgill "had his finger inside the trigger guard." The Arkansas State Crime Laboratory tested the gun, which included firing it a total of eight times, and reached the following results: (1) the "pistol failed to fire when various exterior surfaces of the pistol were subjected to impact"; (2) the decocking mechanism functioned properly; and (3) "[n]o mechanical condition was noted which would cause this pistol to fire without the trigger being depressed."

On February 27, 2002, Randall Aragon was the Chief of Police of the City of Conway. According to Lyons, it was the policy and practice of the City of Conway to issue .45 caliber weapons with hollow point bullets to officers and to require them to use them while on duty. It was also the policy to purchase and distribute Sig Sauer pistols even though the P220 series has no safety device. Lyons contends that the City of Conway adopted this policy in order to inflict maximum harm upon suspects in deadly force situations. Lyons admits that a proper arrest with appropriate use of force would have been reasonable under the circumstances but contends that the amount of force used as well as the policy requiring officers to carry .45 caliber weapons with hollow point bullets violated his constitutional rights. On December 20, 2004, Lyons filed this claim.

**III.**

Lyons has alleged that Cowgill denied him his right to be free from excessive force and unlawful seizure. "Excessive force claims arising from arrests are analyzed under the Fourth Amendment, and the use of force is not constitutionally excessive if the 'officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them.'" *Nelson v. County of Wright*, 162 F.3d 986, 990 (8th Cir. 1998) (citing *Graham v. Connor*, 490 U.S. 386, 394, 397, 109 S. Ct. 1865, 1871-72, 104 L. Ed. 2d 443 (1989)) (citation omitted). Furthermore, a "Fourth Amendment seizure occurs when an officer restrains the liberty of an individual through physical force or show of authority." *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 88 S. Ct. 1868, 1879, 20 L. Ed. 2d 889 (1968)). To violate the Fourth Amendment, the restraint in liberty must be unreasonable and "must be effectuated '*through means intentionally applied*.'" *Id.* at 846-47 (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596-97, 109 S. Ct. 1378, 1381, 103 L. Ed. 2d 628 (1989)).

> Whether a seizure, including the actions of the officer, is objectively unreasonable is determined by the totality of the circumstances and must be judged from the viewpoint of a reasonable officer on the scene, irrespective of the officer's underlying intent or motivation. The reasonableness of force depends on the facts and circumstances of each case accounting for '[(1)] the severity of the crime at issue, [(2)] whether the suspect poses an immediate threat to the safety of the officer or others, and [(3)] whether he is actively resisting arrest or attempting to evade arrest by flight.'

*Id.* at 848 (quoting *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872). "It may also be appropriate to consider the extent of any injury sustained by the suspect, and standard police procedures." *Nelson*, 162 F.3d at 990 (citing *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990); *Ludwig v. Anderson*, 54 F.3d 465, 472 (8th Cir. 1995)) (citations omitted). Lyons does not dispute that Cowgill's actions prior to the shooting were reasonable. Concerning the shooting, of the five factors mentioned above – the crime was not severe, the officers had determined that Lyons did not present a threat, Lyons was not resisting or fleeing when he was shot, the extent of the injury sustained by Lyons was serious, and shooting a suspect in these circumstances is not standard police procedure – all favor Lyons. It would be reasonable for a jury to conclude that it was unreasonable for Cowgill to shoot Lyons in these circumstances.

As to Cowgill's intent, Cowgill correctly notes that a "Fourth Amendment 'seizure' requires an intentional act by a governmental actor" because "'the Fourth Amendment addresses "misuse of power," . . . not the accidental effects of otherwise lawful government conduct.'" *McCoy*, 342 F.3d at 847 (citing *Brower*, 489 U.S. at 596-97, 190 S. Ct. at 1381). Federal courts have generally found that when an officer unknowingly and accidentally shoots a criminal suspect, that suspect has no claim under the Fourth Amendment. *See id*; *Dodd v. City of Norwich*, 827 F.2d 1, 7-8 (2d Cir. 1987); *Owl v. Robertson*, 79 F. Supp. 2d 1104, 1114 (D. Neb. 2000).

7

However, the issue here is not whether, if Cowgill shot Lyons unintentionally, he is liable to Lyons under the Fourth Amendment. The issue is whether or not Cowgill intentionally shot Lyons. Although not in this specific setting, the Eighth Circuit has otherwise held that "[i]ntent is a question of fact . . . ." *United States v. Orchard*, 332 F.3d 1133, 1140 (8th Cir. 2003) (affirming a conviction of intentionally distributing a controlled substance analogue to a person under twenty-one years of age); *see also In re K-tel Int'l, Inc. Securities Litigation*, 300 F.3d 881, 894 (8th Cir. 2002) (stating that "[g]enerally, the issue of whether a particular intent existed is a question of fact for the jury" in a case involving securities litigation); *First Dakota Nat'l Bank v. St. Paul Fire & Marine Ins. Co.*, 2 F.3d 801, 811 (8th Cir. 1993) (ruling that "[i]ntent is a quintessential jury issue" in a case where "manifest intent" was a necessary element of plaintiff's claim). Thus, summary judgment is appropriate only if viewing the facts in the light most favorable to the non-moving party, no jury would reasonably conclude that Cowgill intentionally shot Lyons.

The primary facts tending to show Cowgill did not intentionally shoot Lyons are as follows: (1) Cowgill's testimony that the gunshot was an accident, and that he was merely attempting to reholster his weapon; and (2) Hobbs witnessing Cowgill "pawing at his coat" with his gun, which could be interpreted as showing that Cowgill was attempting to reholster the weapon. The primary facts tending to show Cowgill did intentionally shoot Lyons are as follows: (1) the conclusion of the Internal Affairs investigation that the gun fired because Cowgill had his finger inside the trigger guard; (2) the crime lab test result that the pistol failed to fire when its exterior surfaces were subject to impact in a manner similar to the one described by Cowgill; and (3) the crime lab test result of the lack of a mechanical condition that would cause the pistol to fire without the trigger being depressed. Additionally, there are the facts that neither Hobbs nor Lyons witnessed Cowgill's gun go off and

8

that Cowgill was noticeably upset after the shot fired, both of which are subject to multiple interpretations.

According to *Reeves*, the Court should disregard Cowgill's testimony, as the jury is not required to believe it, and instead should only give credence to the uncontradicted, unimpeached evidence that comes from disinterested witnesses. A different rule would enable most any defendant, civil or criminal, to avoid liability in a situation such as this – when a person is shot, no one but the shooter witnessed the gun fire, and intent is an element of the claim – because of the inability of the party with the burden of proof to definitively prove intent. Intent is a quintessential jury question. Here, even without considering Cowgill's testimony, it would be reasonable for a jury to conclude that he did not intentionally shoot Lyons. However, because of the tests tending to show that the trigger was depressed by Cowgill's finger inside the trigger guard, the proper functioning of the weapon, and the lack of testimony of a disinterested eyewitness to the contrary, it would also be reasonable for a jury to conclude that Cowgill intentionally fired his weapon. Thus, there is a genuine issue for trial, and Cowgill's motion for summary judgment on Lyons's Fourth Amendment claim is therefore denied.

As to Lyons's claims arising under the Eighth and Fourteenth Amendments, Cowgill properly argues that such claims are inapplicable here. The Eighth Circuit has stated that the

> "two primary sources of constitutional protection against physically abusive governmental conduct" are the Fourth and Eighth Amendments. The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that "arise[] in the context of an arrest or investigatory stop of a free citizen," while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive-force claims brought by convicted criminals serving their sentences.

9

*Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) (quoting *Graham*, 490 U.S. at 394, 109 S. Ct. at 1871) (citing *Whitley v. Albers*, 475 U.S. 312, 318-22, 106 S. Ct. 1078, 1083-85, 89 L. Ed. 2d 251 (1986)) (citations omitted). Because the alleged excessive force took place during the arrest of Lyons, rather than after Lyons had been convicted and was serving a criminal sentence, his claim is governed by the Fourth Amendment. Because there is no claim under the Eighth Amendment, summary judgment is appropriate.

With regard to any substantive due process claim against Cowgill, the Supreme Court has stated,

> Today we make explicit what was implicit in *Garner*'s analysis, and hold that *all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham*, 490 U.S. at 395, 109 S. Ct. at 1871. Once again, the Fourth Amendment governs any claim Lyons may have against Cowgill. Summary judgment is therefore granted with respect to Lyons's Fourteenth Amendment claim against Cowgill.

## IV.

Lyons has also brought a Fourteenth Amendment claim against the City of Conway, as well as Aragon and Cowgill in their official capacities. While "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law[, o]fficial-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099,

3105, 87 L. Ed. 2d 114 (1985) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237-38, 94 S. Ct. 1683, 1686-87, 40 L. Ed. 2d 90 (1974)) (quoting *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 2035 n.55, 56 L. Ed. 2d 611 (1978)). "It is *not* a suit against the official personally, for the real party in interest is the entity." *Id.* at 166, 105 S. Ct. at 3105.

Lyons does assert that the City of Conway is one of the wrongdoers. He claims that it was unlawful for the City of Conway to have a policy in place that required officers to carry .45 caliber weapons with hollow point bullets. A city can be liable under § 1983 when a constitutional injury is caused by execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy. *Monell*, 436 U.S. at 694, 98 S. Ct. at 2037-38.

> [H]owever, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Board of County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388, 137 L. Ed. 2d 626 (1997). Thus, in order to overcome the defendants' motion for summary judgment, Lyons must demonstrate that a jury could reasonably conclude that he was deprived of a federal right and that the City of Conway caused that deprivation. Lyons claim fails on both counts.

Lyons has failed to identify which federal right he has been deprived of as a result of this policy. He brought the claim under the Fourteenth Amendment; presuming the right at stake would be Lyons's substantive due process rights, he can only recover if the executive action at issue "'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *County*

*of Sacramento v. Lewis*, 523 U.S. 833, 847, 118 S. Ct. 1708, 1717, 140 L. Ed. 2d 1043 (1998) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128, 112 S. Ct. 1061, 1070, 117 L. Ed. 2d 261 (1992)). The stated rationale behind the policy at issue, as noted by Lyons, "was to provide weapons that would inflict maximum harm upon suspects in deadly force situations." Such a rationale is not arbitrary or conscience shocking, in a constitutional sense, and there is no evidence in the record to demonstrate otherwise.

If, on the other hand, the right at issue is Lyons's Fourth Amendment right to be free from excessive force, then the defendants are similarly free from liability. If Cowgill intentionally shot Lyons, then such a departure from standard police practice absolves the City of any liability, as there is no culpability on the part of the City; Cowgill's intent cannot be imputed to the City on a theory of *respondeat superior*. *See Monell*, 436 U.S. at 691, 98 S. Ct. at 2036 ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). If Cowgill accidentally and negligently shot Lyons, then Lyons has failed to establish that "through *deliberate* conduct, the [City of Conway] was the 'moving force' behind the injury alleged." In short, Lyons has failed to demonstrate whether the City's policy deprived him of a constitutional right, and if so, how it caused the deprivation. Summary judgment is therefore granted on behalf of the City of Conway, as well as Aragon and Cowgill in their official capacities.

## V.

Cowgill argues that he is entitled to qualified immunity for the claims brought against him in his individual capacity. Qualified immunity protects a state actor performing a discretionary function from suit, so long as the alleged conduct does not violate clearly established federal rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.

Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). In determining whether an official is entitled to qualified immunity, the Court asks: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right; and (2) whether the right was so clearly established that a reasonable official would understand that he is violating the right. *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001); *Buckley v. Rogerson*, 133 F.3d 1125, 1128-29 (8th Cir. 1998).

As previously discussed, taking the facts in the light most favorable to Lyons, Lyons's only constitutional right that Cowgill's conduct may have violated was Lyons's right to be free from excessive force, and that Cowgill only violated this right if he intended to shoot Lyons. Qualified immunity is therefore moot with respect to each of Lyons's additional claims. The question, then, is whether Lyons's right to be free from excessive force was so clearly established that a reasonable official would understand that he is violating that right. In this situation, it is clearly established that the Fourth Amendment prohibits the shooting of an unarmed misdemeanor suspect. *See Tennessee v. Garner*, 471 U.S. 1, 3, 105 S. Ct. 1694, 1697, 85 L. Ed. 2d 1 (1985) ("[Deadly force] may not be used unless it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others."). Furthermore, a reasonable official should understand that intentionally shooting such a suspect violates that right. For these reasons, Cowgill is not immune from suit at this stage.

## CONCLUSION

For the reasons stated in this opinion and order, the defendants' motion for summary judgment is granted in part and denied in part. With respect to Lyons's claim arising under the Fourth Amendment, the motion for summary judgment is denied. Cowgill's motion for qualified

immunity on that issue is also denied. With respect to the remainder of Lyons's claims, the motion for summary judgment is granted. Document #22.

IT IS SO ORDERED this 23rd day of April, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE